Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

*Attorneys for Plaintiffs*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STANLEY D. JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENOVO (UNITED STATES), INC., LENOVO GROUP LIMITED, and SUPERFISH, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Stanley D. Johnson, on behalf of himself and all others similarly situated, by his attorneys, makes the following allegations and claims for his Complaint against Lenovo (United States), Inc., Lenovo Group Limited (together referred to as "Lenovo") and Superfish, Inc. ("Superfish"). The following allegations are made upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon knowledge.

**NATURE OF THE ACTION**

1. This is a consumer class action brought by Plaintiff on behalf of himself and all others similarly situated in the United States of America who have purchased certain models of computers manufactured and marketed by Lenovo that were pre-installed with spyware and/malware called Superfish from at least September 2014 through February 2015 (the "Relevant Period"). Superfish, among other actions, monitors, intercepts, analyzes and redirect users' web activity and personal information and tampers with Windows' security system to procure advertising into secure pages. As a result, users of these computers were exposed to potential computer hackers and unauthorized activity monitoring.

**PARTIES**

2. Plaintiff Stanley D. Johnson is an individual residing in Thousand Oaks, California. Plaintiff bought a YOGA2-11, Model # 20428 Lenovo computer on February 13, 2015 from Best Buy for $579.99 plus tax.

3. Defendant Lenovo (United States), Inc. ("Lenovo US") is a Delaware corporation with its headquarters located at 1009 Think Place, Morrisville, North Carolina 27560.

4. Defendant Lenovo Group Limited ("Lenovo Group") is a Hong Kong Corporation with its headquarters located at Shangdi Information Industry Base, No 6 Chuang Ye Road, Haidian District, 100085 Beijing, China. Lenovo Group is the parent company of Lenovo US.

5. Defendants Lenovo US and Lenovo Group are collectively referred to as "Lenovo" in this Complaint.

6. Defendant Superfish, Inc. is a Delaware corporation with its headquarters located at 2595 East Bayshore Road, Palo Alto, California 94303.

**JURISDICTION AND VENUE**

7. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff is bringing claims under the Federal Wiretap Act (Title 1 of the ECPA, 18 U.S.C. §§ 2510 *et seq*.), the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and the Stored Communications Act ("SCA") (18 U.S.C. § 2701, *et seq*.).

8. This Court also has diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff's claims and the claims of the other members of the class exceed $5,000,000.00, exclusive of interests and costs, and at least one class member is a citizen of a state different from the Defendants' states of citizenship.

9. In addition, this Court has jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy under Article III of the U.S. Constitution and the state law claims are derived from a common nucleus of operative facts that the parties would ordinarily expect to try them in one judicial proceeding.

10. This Court has personal jurisdiction over Lenovo because Lenovo conducts business in California.

11. This Court has personal jurisdiction over Superfish because Superfish is headquartered in California and conducts business in California.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Superfish is headquartered in this District. Also, a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

13. Lenovo is a computer technology company that designs, develops, and manufactures various technological products, such as laptops, tablets, desktops and all-in-ones, and workstations. According to its website, Lenovo is the world's largest PC vendor and fourth largest smartphone company. Lenovo is a $39 billion company with more than 54,000

employees in more than 60 countries serving customers in more than 160 countries. Lenovo US is the subsidiary of Lenovo Group.

14. Beginning in September 2014, Lenovo pre-installed Superfish VisualDiscovery spyware on some of their computers.

15. A security expert, Marc Rogers, published a blog post on February 19, 2015 titled "*Lenovo Installs Adware on Customer Laptops and Compromises all SSL*." Mr. Rogers detailed the invasive features of Superfish and the potential damage it can cause. The article can be accessed at http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptoms-and-compromises-all-ssl/. His blog stated in part:

> Superfish Features:
>
> - Hijacks legitimate connections.
> - Monitors user activity.
> - Collects personal information and uploads it to it's servers
> - Injects advertising in legitimate pages.
> - Displays popups with advertising software
> - Uses man-in-the-middle attack techniques to crack open secure connections.
> - Presents users with its own fake certificate instead of the legitimate site's certificate.
>
> This presents a security nightmare for affected consumers.
>
> 1. Superfish replaces legitimate site certificates with its own in order to compromise the connections so it can inject its adverts. This means that anyone affected by this adware cannot trust any secure connections they make.
> 2. Users will not be notified if the legitimate site's certificate has been tampered with, has expired or is bogus. In fact, they now have to rely on Superfish to perform that check for them. Which it does not appear to do.
> 3. Because Superfish uses the same certificate for every site it would be easy for another hostile actor to leverage this and further compromise the user's connections.
> 4. Superfish uses a deprecated SHA1 certificate. SHA1 has been replaced by SHA-256 because attacks against SHA1 are now feasible with ordinary computing hardware. This is insult on top of injury. Not only are they compromising people's SSL connections but they are doing it in the most cavalier, insecure way possible.
> 5. Even worse, they use crackable 1024-bit RSA!
> 6. The user has to trust that this software which has compromised their secure connections is not tampering with the content, or stealing sensitive data such as usernames and passwords.
> 7. If this software or any of its control infrastructure is compromised, an attacker would have complete and unrestricted access to affected customers banking sites, personal data and private messages.

16. Windows Ecosystem Vice President Mark Cohen told InfoWorld that "Lenovo had screened the software from Superfish before it was installed on Lenovo's consumer laptop lines" and "had asked Superfish to remove certain features that abused SSL connections."

17. Customer complaints began almost immediately. On January 23, 2015, Lenovo admitted that it had installed Superfish software on various computers and that it would no longer install the software on future products. Lenovo, however, did not make any efforts to remove the software on existing products or help paying customers with the removal of the damaging software.

18. On February 19, 2015, Lenovo issued a press release on its website titled "Lenovo Statement on Superfish." Lenovo admitted that it had pre-installed Superfish on some of its computers and that its goal "was to improve the shopping experience using their visual discovery techniques." Lenovo also stated in the press release that it had customer complaints about the software.

19. In this press release, there was a link to a description of Superfish. The page stated that "Superfish intercepts HTTP(s) traffic using a self-signed root certificate. This is stored in the local certificate store and provides a security concern." Here, Lenovo admitted to wiretapping communications and admitted that by pre-installing Superfish on its computers, customers were vulnerable to attack.

20. In addition, Lenovo listed the make and models of computers that may have had Superfish installed. The makes and models listed are as follows:

G Series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45, G40-80

U Series: U330P, U430P, U330Touch, U430Touch, U530Touch

Y Series: Y430P, Y40-70, Y50-70, Y40-80, Y70-70

Z Series: Z40-75, Z50-75, Z40-70, Z50-70, Z70-80

S Series: S310, S410, S40-70, S415, S415Touch, S435, S20-30, S20-30Touch

Flex Series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 Pro, Flex 10

MIIX Series: MIIX2-8, MIIX2-10, MIIX2-11, MIIX 3 1030

YOGA Series: YOGA2Pro-13, YOGA2-13, YOGA2-11, YOGA3 Pro

E Series: E10-30

Edge Series: Lenovo Edge 15

21. The same day, an article was published on *Bloomberg.com* titled "*Lenovo Apologizes After It 'Messed Up' With Tracking Software*" by Jordan Roberson. The article can be accessed at http://www.bloomberg.com/news/articles/2015-02-19/lenovo-says-it-messed-up-by-preloading-web-tracking-software. The article stated in part:

> "**We messed up badly here**," Peter Hortensius, Lenovo's chief technology officer, said in an interview. "**We made a mistake. Our guys missed it. We're not trying to hide from the issue -- we're owning it**."

22. Another article was published on February 19th on *eff.com* titled "*Lenovo is Breaking HTTPS Security on its Recent Laptops*" by Joseph Bonneau, Peter Eckersley, and Jacob Hoffman-Andrews. The article can be accessed at https://www.eff.com/es/deeplinks/2015/02/further-evidence-lenovo-breaking-https-security-its-laptops. The article stated in part:

> Lenovo has not just injected ads in a wildly inappropriate manner, but engineered a **massive security catastrophe** for its users. The use of a single certificate for all of the MITM attacks means that *all* HTTPS security for at least Internet Explorer, Chrome, and Safari for Windows, on *all* of these Lenovo laptops, is now broken. If you access your webmail from such a laptop, any network attacker can read your mail as well or steal your password. If you log into your online banking account, any network attacker can pilfer your credentials. All an attacker needs in order to perform these attacks is a copy of the Superfish MITM private key.
>
> Using a MITM certificate to inject ads **was an amateurish design choice** by Superfish. Lenovo's decision to ship this software **was catastrophically irresponsible and an utter abuse of the trust** their customers placed in them.

23. On February 20, 2015, the United States Computer Emergency Readiness Team, a division of the United States Department of Homeland Security, issued an alert titled "Lenovo Superfish Adware Vulnerable to HTTPS Spoofing." The alert gave a description of the problem and stated that its impact was "a machine with Superfish VisualDiscovery installed will be vulnerable to SSL spoofing attacks without a warning from the browser." The alert further stated that users should uninstall spyware along with removing the affected root CA certificates.

/////

/////

**PLAINTIFF'S FACTUAL ALLEGATIONS**

24. Plaintiff bought a YOGA2-11, Model # 20428 Lenovo computer on February 13, 2015 from Best Buy for $579.99 plus tax. Unknown to Plaintiff at the time of purchase, the computer had Superfish spyware software pre-installed on it.

25. As a result of the Superfish spyware, Plaintiff was unable to connect the computer to the internet. He took the computer to Dr. PC where it was determined that the computer had Superfish spyware pre-installed on it. Dr. PC uninstalled the Superfish spyware and added anti-virus software. Plaintiff paid $192.00 for these services.

**CLASS ACTION ALLEGATIONS**

26. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23. Plaintiff seeks to represent a class (the "Class") described as follows:

> All individuals and entities in the United States who purchased a Lenovo computer with the Superfish Surveillance Software preinstalled on it and who connected the computer to the internet.

27. The members of the Class are so numerous that the joinder of all members is impractical. While the exact numbers of Class members is unknown to Plaintiff at this time, it is believed to be in the millions.

28. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate. Plaintiff's claims are also typical of members of the Class and Plaintiff can fairly and adequately represent the interests of the Class.

29. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because it involves questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including but not limited to:

(a) Whether Defendants violated the Federal Wiretap Act, Title I of the ECPA (18 U.S.C. §§ 2510 *et seq.*);

(b) Whether Defendants violated the Stored Communications Act, Title II of the ECPA (18 U.S.C. §§ 2701 *et seq.*);

(c) Whether Defendants violated the Computer Fraud and Abuse Act (18 U.S.C. §1030);

(d) Whether Defendants violated California Penal Code §§631 and 637.2, the California Invasion of Privacy Act ("CIPA");

(e) Whether Defendant Lenovo violated California Business and Professional Code §§17200, *et seq*., The Unfair Competition Law;

(f) Whether Defendants violated California Penal Code § 502, The California Computer Crime Law ("CCCL");

(g) Whether Defendants committed the tort of invasion of privacy;

(h) Whether Defendants committed the tort of trespass to chattels;

(i) Whether Defendants were unjustly enriched;

(j) Whether Plaintiff and members of the Class have been injured by Defendants' conduct;

(k) Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages and/or equitable, injunctive relief, or declaratory relief.

30. Plaintiff's claims are typical of those of other Class members because Plaintiff's computer was infected with Superfish, like that of every Class member.

31. Plaintiff will fairly and adequately represent and protect the interests of the Class.

32. Plaintiff's counsel is competent and experienced in class action litigation.

33. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class.

34. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Lenovo and Superfish and would lead to repetitive adjudication of common questions of law and fact.

35. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class certification, Lenovo and Superfish's violations of the law would go unremedied and Lenovo and Superfish will retain the benefits of its wrongdoing.

36. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Lenovo and Superfish have acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

### VIOLATION OF THE FEDERAL WIRETAP ACT (TITLE I OF THE ECPA, 18. U.S.C. §§ 2510 *et seq.*)

38. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

39. Under the Federal Wiretap Act, a plaintiff has a private cause of action. The statute states "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

40. "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

41. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

42. "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

43. Under § 2511(1)(a) of the Act, it is illegal for a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."

44. Plaintiff and Class members are persons as defined under § 2510(6) of the Act.

45. Defendants Lenovo and Superfish are corporations and therefore persons as defined under § 2510(6) of the Act.

46. Defendants intentionally intercepted and endeavored to intercept the Plaintiff and Class Members' electronic communications, without their knowledge or consent, in violation of the Act.

47. Under 18 U.S.C. § 2520, Plaintiff seeks preliminary, equitable, and declaratory relief; actual damages or statutory damages, whichever is greater, punitive damages; and reasonable attorneys' fees and costs.

**COUNT II**

**VIOLATION OF THE STORED COMMUNICATIONS ACT (TITLE II OF THE ECPA, 18 U.S.C. §§ 2701 *et seq.*)**

48. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

49. Under the Stored Communications Act, a plaintiff has a private cause of action. The statute states "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2707(a).

50. Under the Act, it is unlawful for a person who "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentional exceeds an authorization to access that facility" and "thereby obtains, alters, or

prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system…" 18 U.S.C. § 2701(a).

51. "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

52. "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

53. Defendants intentionally intercepted the Plaintiff's communications while they were in storage. In addition, the Defendants accessed the content of the Plaintiff's stored communications without authorization or exceeded its authorization from any party to the communications.

54. Under 18 U.S.C. § 2707(c), Plaintiff seeks statutory damages no less than $1,000; punitive damages, and reasonable attorneys' fees and costs.

**COUNT III**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)**

55. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

56. Under the Computer Fraud and Abuse Act, a plaintiff has a private cause of action. Under the Act, "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The conduct must involve "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related court of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

57. Under the Act, it is illegal for a person who "intentionally accesses a computer without authorization or exceeds access, and thereby obtains…information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

58. "Protected computer" means a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B).

59. The Plaintiff's and Class Members' computers were used in interstate commerce and therefore were protected computers as defined under the Act.

60. Defendants intentionally accessed the Plaintiff's and Class Members' computers without authorization or exceeded access to the computers, and obtained information from the protected computers.

61. Under 18 U.S.C. § 1030(g), Plaintiff seeks compensatory damages, injunctive relief, and other equitable relief. Plaintiff also seeks reasonable attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF CALIFORNIA PENAL CODE §§ 631 AND 637.2
CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")**

62. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

63. California Penal Code § 631(a) makes it unlawful, by means of any machine, instrument or contrivance, to purposefully intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read or attempt to read or learn the content of any such communications without the consent of all parties to the communication.

64. URLs, web page get and post commands and emails are communications within the meaning of Section 631.

65. Defendants intercept, read, and learn the content of Class Members' communications using machines, instruments or contrivances as defined by the CIPA.

66. Plaintiffs and Class Members did not consent to Defendants' interception and reading of their communications.

67. Defendants are not intended parties to the communications.

68. Defendants are "persons" within the meaning of the CIPA.

69. Plaintiff and Class Members were and are injured by Defendants' unlawful interception and reading of their communications.

70. Defendants' conduct in violation of the CIPA occurred in the State of California because those acts resulted from business decisions, practices and operating policies that Superfish developed, implemented and utilized in California which are unlawful and constitute criminal conduct in Superfish's state of residence and principal place of business. Superfish profited from its conduct in the State of California. Defendants also intercepted some of the Class Members' communications in California and used at least some devices located in California.

71. As a result of Defendants' violations of Section 631, Plaintiff and Class Members are entitled to relief under Section 637.2, including: preliminary and injunctive relief; appropriate declaratory relief; statutory damages of $5,000 per class member; and reasonable attorneys' fees and costs.

**COUNT V**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONAL CODE §§ 17200, *ET SEQ.*, THE UNFAIR COMPETITION LAW ("UCL") AS AGAINST DEFENDANT LENOVO**

72. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

73. In violation of California Business and Professional Code § 17200, *et seq.*, Defendant Lenovo's conduct is ongoing and includes, but is not limited to, statements made by Defendant Lenovo regarding the computers pre-installed with the Superfish software.

74. By engaging in the acts and practices described herein, Defendant Lenovo has committed one or more acts of unfair competition within the meaning of the UCL, and as a result, Plaintiff and the Class Members have suffered injury-in-fact and have lost money and/or property, namely, as described herein, the loss of use or diminution of value of the computers.

75. In reasonable reliance on Defendant Lenovo's misrepresentations and omissions, Plaintiff interacted with various secure websites believing that this information was secure and confidential. In actuality, without Plaintiff's knowledge or consent, defendant rendered the computers vulnerable to attack.

76. Defendant Lenovo's business acts and practices are unlawful, in part, because they violate California Penal Code § 502, California Penal Code § 630, 18 U.S.C. §§ 2511, *et seq.*, and 18 U.S.C. § 1030. Defendant is therefore in violation of the "unlawful" prong of the UCL.

77. Defendant Lenovo's business acts and practices are unfair, because they cause harm and injury in fact to Plaintiff and Class Members, and for which Defendant Lenovo has no justification other than to increase, beyond what Defendant Lenovo would have otherwise realized, its profit from the sale of the computers.

78. Moreover, Defendant Lenovoknew, or should have known, that consumers care about the status of personal information and internet privacy, but are unlikely to be aware of the manner in which defendant monitored their communications. Defendant Lenovo therefore is in violation of the "unfair" prong of the UCL.

79. Defendant Lenovo's acts and omissions were fraudulent within the meaning of the UCL, because they were likely to, and did, in fact, mislead the members of the public to whom they were directed.

80. Plaintiff, on behalf of himself and each Class Member, seek restitution, injunctive relief, and other relief as provided under the UCL.

## COUNT VI

### VIOLATION OF CALIFORNIA PENAL CODE § 502<br>THE CALIFORNIA COMPUTER CRIME LAW ("CCCL")

81. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

82. Defendants violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking and using Plaintiff's and the Class Members' personally

identifiable information and rendering the computers vulnerable to SSL spoofing attacks without a warning from the browser.

83. Defendants accessed, copied, used, made use of, interfered with, and/or altered data belonging to Plaintiff and Class Members: (1) in and from the State of California; and (2) in the states in which the Plaintiff and the Class Members are domiciled.

84. Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

85. Defendants have violated California Penal Code § 502(c)(1) by knowingly and without permission altering, accessing, and making use of Plaintiff's and Class Members' computers in order to execute a scheme to defraud consumers by utilizing and profiting from the sale of their personally identifiable data.

86. Defendants have violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiff's and Class Members' computer systems and/or computer networks.

87. Defendants have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiff's and Class Members' computer systems and/or computer networks.

88. Pursuant to California Penal Code § 502(b)(10) a "computer contaminant" is defined as "any set of computer instructions that are designed to ... record, or transmit information within computer, computer system, or computer network without the intent or permission of the owner of the information."

89. Defendants have violated California Penal Code § 502(6)(8) by knowingly and without permission introducing a "computer contaminant" into the transactions between Plaintiff and the Class Members and websites; specifically, a fake root certificate.

90. As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused loss to Plaintiff and the Class Members in an amount to be proven at trial. Plaintiff and the Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

91. Plaintiff and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

92. Plaintiff and Class Members have suffered irreparable and incalculable harm and injuries from Defendants' violations. The harm will continue unless Defendants are enjoined from further violations of this section. Plaintiff and Class Members have no adequate remedy at law.

93. Plaintiff and the Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendants' violations were willful and, upon information and belief, Defendants are guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

94. Plaintiff and the Class Members have also suffered irreparable injury from these unauthorized acts and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiff to injunctive relief.

## COUNT VII

## INVASION OF PRIVACY

95. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

96. Plaintiff had an interest in: (1) precluding the dissemination and/or misuse of his sensitive, confidential personally identifiable information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without having that information intercepted and transmitted to Defendants without his knowledge or consent.

97. Plaintiff had a reasonable expectation that their personally identifiable information and other data would remain confidential and that Defendants would not install

spyware on his computer that would enable Defendants to track his activities on the internet or intercept his emails.

98. This invasion of privacy is sufficiently serious in nature, scope and impact.

99. This invasion of privacy constitutes an egregious breach of the social norms underlying the privacy right.

**COUNT VIII**

**TRESPASS TO CHATTELS**

100. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

101. Defendants, intentionally and without consent or other legal justification, tracked Plaintiff's activity on the internet.

102. Defendants, intentionally and without consent or other legal justification, placed malicious spyware on Plaintiff's computer which also rendered his computer vulnerable to attack.

103. Defendants' intentional and unjustified placing of malicious spyware and interception and alteration of communications interferes with plaintiffs' use of their computers.

**COUNT IX**

**UNJUST ENRICHMENT**

104. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

105. Plaintiff and Class members conferred a monetary benefit on Lenovo and Superfish in the form of monies paid for the purchase of computers from Lenovo.

106. Defendants appreciate or have knowledge of the benefits conferred directly upon them by Plaintiff and members of the Class.

107. Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and members of the Class.

/////

/////

108. Plaintiff and the Class have conferred directly upon Defendants an economic benefit in the nature of monies received and profits resulting from sales to the economic detriment of Plaintiff and the Class members.

109. The economic benefit, including the monies paid and profits derived by Defendants and paid by Plaintiff and members of the Class, is a direct and proximate result of Defendants' unlawful practices as set forth in this Complaint.

110. The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

111. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiff and the Class.

112. Plaintiff and the Class have no adequate remedy at law.

## COUNT X

## DECLARATORY RELIEF
## 28 U.S.C. § 2201

113. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

114. An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiff and Defendants for which Plaintiff desires a declaration of rights.

115. Plaintiff contends that Defendants' acts, practices and conduct violate various federal and state privacy and unfair competition laws, as alleged herein.

116. Plaintiff, on behalf of himself and the class, is entitled to a declaration that defendants illegally intercepted their electronic communications, improperly accessed the computers, violated the statutes and laws alleged herein, and are entitled to rescission of their purchases of the computers.

## PRAYER FOR RELIEF

On behalf of himself and the Class set forth, Plaintiff requests the Court order relief and enter judgment against Defendants and enter an order:

A. Certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and, pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiff to be Class representative and his undersigned counsel to be Class counsel;

B. Requiring Defendants to make whole any losses suffered by Plaintiff and Class members;

C. Enjoining Defendants from further engaging in the unlawful conduct complained of herein;

D. Awarding Plaintiff and the Class appropriate relief, including actual and statutory damages, restitution and disgorgement;

E. Awarding pre-judgment and post-judgment interest;

F. Requiring Defendants to pay for notifying the Class of the pendency of this action;

G. Requiring Defendants to pay Plaintiff and Class members reasonable attorneys' fees, expenses, prejudgment interest and the costs of this action; and

I. Providing all other and further relief as this Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues triable of right by jury.

DATED: March 10, 2015

**GREEN & NOBLIN, P.C.**

By: /s/ Robert S. Green
Robert S. Green

James Robert Noblin
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

William Federman
Federman & Sherwood
10205 N. Pennsylavania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

Attorneys for Plaintiff